Moe Horwitz v. Commissioner.
Horwitz v. Commissioner
Docket No. 31693.
United States Tax Court
1952 Tax Ct. Memo LEXIS 41; 11 T.C.M. (CCH) 1097; T.C.M. (RIA) 52324; November 14, 1952
*41 During 1944 and 1945, petitioner was engaged in selling textiles at prices above O.P.A. ceilings. Held, petitioner has failed to sustain his burden of proving that respondent erred in determining the amounts of deficiencies for the taxable years. Held, further, that 25 per cent penalties are owing for the taxable years in question for failure to file Federal income tax returns for such years. Moe Horwitz, pro se. Clay C. Holmes, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined deficiencies and penalties in petitioner's income taxes for the years 1944 and 1945 as follows: 50%
25%
Year
Deficiency
Penalty
Penalty
1944
$28,716.02
$14,358.01
$ 7,179.01
1945
88,862.99
44,431.50
22,215.75
The issues to be decided *42 are whether respondent correctly determined petitioner's taxable income for the years 1944 and 1945, and whether petitioner is liable for 25 per cent penalties for each year for failure to file Federal income tax returns. At the hearing respondent abandoned his claim for the 50 per cent penalty. Findings of Fact Petitioner is an individual, residing in New York City. He did not file Federal income tax returns for either 1944 or 1945. Petitioner got out of the Army in October 1943. During 1944 and 1945, he engaged in black market activities consisting primarily of selling textiles in the New York area, which he bought from various brokers. In 1944, petitioner had an office in the Candler Building, New York City, for a few months. In 1945, he had an office located at 55 West 42nd Street, New York City, which he occupied under the name of Alvin Kriessman. Sometime during the taxable years, petitioner also had an office at 570 Seventh Avenue, which he occupied under the name of Moe Horwitz. In 1944, one of respondent's special agents made an examination of petitioner's income for the years 1944 and 1945. Such examination grew out of a general investigation of black market activities *43 and stemmed from information obtained through check-cashing agencies in New York City, which had cashed numerous checks for petitioner during 1944. At that time, check-cashing agencies in New York were licensed by the State banking department but were loosely regulated and would cash checks for almost anybody, under almost any name. Their only concern was that the maker had sufficient funds in the bank to cover the check. The agent obtained a transcript from the Ace Trading Company, a check-cashing agency, of all checks cashed for "Moe Horwitz". The owner of that company identified petitioner's picture as the picture of the person for whom the checks were cashed. In his deficiency notice, respondent determined that petitioner had net income for 1944 in the amount of $51,007.72; and that during 1945, petitioner had net income in the amount of $120,655.43. Opinion RICE, Judge: Petitioner introduced no substantial evidence, other than his own testimony, that he did not make more than $500 during 1944 and that he made no income during 1945, and that somebody was using his name to transact business. He claimed that he could not give the name of such person. The record shows that *44 petitioner was engaged in black market activities during the years in question. Some of the testimony at the hearing would lead us to believe that petitioner might have been acting as a "front" for other parties when he received and cashed the checks giving rise to the deficiencies. However, there was no evidence as to what amounts, if any, which petitioner may have received, were turned over by petitioner to other parties, and he has failed to sustain his burden of proving that such amounts were not his income. As we said in Duquesne Steel Foundry Co., 15 B.T.A. 467 (1929), affd. 41 Fed. (2d) 995 (C.A. 3, 1930), affd. 283 U.S. 799 (1931): "* * * The presumption of correctness attaching to the respondent's finding must be overcome by proof of such a character as will enable us definitely to say that respondent has erred. Petitioner having failed to furnish such proof, the finding of the respondent will not be disturbed. [p. 470]" Since petitioner had taxable income during the years involved and failed to file Federal income tax returns for such years, the respondent correctly determined a 25 per cent penalty under section 291 of the Internal Revenue Code *45 for 1944 and 1945. Decision will be entered that there are deficiencies in income tax for the years 1944 and 1945 in the amounts of $28,716.02 and $88,862.99, respectively; and 25 per cent penalties for 1944 and 1945 in the amounts of $7,179.01 and $22,215.75, respectively.